# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CASA BLANCA DE PUNTA MITA,
Sociedad Anónima de Capital Variable,
a corporation formed under the laws
of the United Mexican States,

        Plaintiff/Counterclaim Defendant,

v.

BRIAN J. RAYMENT, an individual, and
FALCON INVESTMENT, LCC, an
Oklahoma limited liability company,

        Defendants/Counterclaim Plaintiffs,

v.

JOSEPH R. FRANCIS, an individual;
SD INMOBILIARIA, .SA. de C.V., a
Mexican corporation,
LA CASA INTERNATIONAL TRUST,
OLBAP HOLDINGS, LLC, a Nevis
corporation; and
CAT INVESTMENTS, LLC, a Nevis
corporation,

        Third-Party Defendants.

Case No. 19-CV-00188-GKF-JFJ

## OPINION AND ORDER

This matter comes before the court on the issue of abstention.  Plaintiff Casa Blanca de

Punta Mita and defendants Brian J. Rayment and Falcon Investment, LCC have each filed briefs

on the issue.  [Doc. 39; Doc. 40].  For the reasons discussed below, the court abstains from

exercising jurisdiction, and this matter is dismissed without prejudice.

## I.    Background and Procedural History

This is primarily an action for declaratory and injunctive relief related to the Order

Directing Sale of Property in Satisfaction of Judgment (Sale Order) entered by Special Judge

Millie Otey in Tulsa County District Court case no. CJ-2012-01321 (Tulsa County Case).[1] Defendant in this case Brian Rayment brought the Tulsa County Case against Joseph R. Francis, among others, seeking payment for legal services provided.  Tulsa County District Judge Linda G. Morrissey entered judgment in Rayment's favor on July 9, 2013 (Tulsa County Judgment).  [Doc. 2-1].

On March 29, 2017, Falcon Investment filed a Motion for Order Directing Sale of Property in satisfaction of the Tulsa County Judgment.[2]  On June 15, 2017, Special Judge Otey entered the Sale Order compelling Francis to apply his assets, specifically, real property identified as Lots 13-B and 14 of the Subdivision "Ranchos Punta Mita," located in Bucerias, Bahia de Bandaras, Nayarit, Mexico (Property), in satisfaction of the Tulsa County Judgment.  [Doc. 2-4].  In the Sale Order, the court determined that "due and proper notice" was provided to Francis, as well as to plaintiff in this matter, Casa Blanca de Punta Mita (Casa Blanca), and third-party defendant SD Inmobiliaria, S.A. de C.V. (S.D. Inmobiliaria)  [Doc. 2-4, p. 3].  Both Casa Blanca and S.D. Inmobiliaria are Mexican corporations.  Further, the Sale Order determined that Francis was the true owner and in control of the Property, notwithstanding the fact that it had been titled in the names of Casa Blanca and S.D. Inmobiliaria.  [*Id.*].  On November 1, 2019, Tulsa County Judge Deborrah Ludi Leitch entered an Order Determining Post Judgment Interest (Interest Order).

---

[1] The court takes judicial notice of documents of public record filed in the Tulsa County Case.  *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

[2] On September 2, 2014, Rayment filed an "Assignment of Judgment" assigning the Tulsa County Judgment to Phoenix Investments, LLC.  On September 3, 2014, Rayment filed a "Corrected Assignment of Judgment" assigning the Tulsa County Judgement to Falcon Investment*s*, LLC.  [Doc. 2-2, p. 2].  On October 13, 2016, Falcon Investment, LLC filed a Motion for Order Correcting Judgment Assignment seeking to correct the Corrected Assignment of Judgment, as well as all pleadings and Orders in the Tulsa County Case, to reflect the proper company name of "Falcon Investment, LLC," rather than "Falcon Investment*s*, LLC."  Special Judge Otey entered an Order Correcting Judgment Assignments, Pleadings, and Orders on October 18, 2016, pursuant to which all documents were corrected to reflect a company name of "Falcon Investment, LLC."

Therein, Judge Ludi Leitch stated that the court's finding that Casa Blanca and S.D. Inmobiliaria's were alter egos of Francis "was also consistent with a final judgment entered in Wynn v. Mantra Films, Inc., et al, including Casa Blanca and S.D. Inmobiliaria, in the District Court of Clark County, Nevada, A-12-660288-B . . . wherein Casa Blanca and S.D. Inmobiliaria were personally served through international process as defendants," as well as "with recent news reports concerning Mr. Francis' ownership of Casa Aramara."

Casa Blanca filed this case against defendants Rayment and Falcon alleging that, with respect to the motion for order directing sale of property and resultant Sale Order, the state court lacked jurisdiction and, further, Falcon Investment failed to comply with the Hague Service Convention, resulting in failure of service upon Casa Blanca under federal law.  Based on these general allegations, the Complaint seeks the following relief:

(1) a judicial declaration that the Sale Order determining the rights of real property in a foreign country is in violation of federal law because issues affecting title to real property are "local actions" and can be decided only by a court in the jurisdiction where the real property is located;

(2) a judicial declaration that the Sale Order is unenforceable against Casa Blanca due to failure of service under the Hague Service Convention;

(3) a judicial declaration that the state court lacked jurisdiction to determine ownership of foreign corporations not properly joined as parties to the action or properly served with process and, to the extent the Sale Order intimates "reverse piercing" or reverse alter ego determination, it is unenforceable because the Oklahoma Supreme Court has not recognized or adopted the doctrine; and

(4) an injunction against Falcon and Rayment prohibiting them from taking or continuing to take any action to enforce the Sale Order in Mexico.

[Doc. 2, p. 11].

Defendants previously moved to dismiss the Complaint on three separate bases, including the *Rooker-Feldman* doctrine.  [Doc. 14].  The court denied the motion.  [Doc. 24].

On February 13, 2020, defendants answered the Complaint.  Additionally, defendants filed a Counterclaim and Third-Party Complaint against Joseph R. Francis, S.D. Inmobiliaria, Lacasa International Trust, OLBAP Holdings, LLC, and CAT Investments, LLC, which seek the following forms of relief:  (1) declaratory judgment to determine that the Property is an assert of third-party defendant Francis; (2) declaratory judgment to determine the alter ego status of Casa Blanca, third-party defendants, and Francis; (3) declaratory judgment to enforce the Sale Order and Interest Order; (4) declaratory judgment that Falcon is the lawful assignee of the Judgment; and (5) damages for fraud and conspiracy to commit fraud.  [Doc. 30; Doc. 31].  Casa Blanca has moved to dismiss defendants' counterclaims.  [Doc. 37].

During a March 2, 2020 status and scheduling conference, the court ordered the parties to simultaneously brief the following issues:  (1) application of the *Rooker-Feldman* doctrine in light of the U.S. Supreme Court's statement in *Lance v. Dennis*, 546 U.S. 459, 466 n.2 (2006), that it "need not address whether there are any circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not named in an earlier state proceeding—*e.g.,* where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent"; (2) whether the court should exercise its discretion to hear the declaratory judgment action based on the factors articulated in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994); and (3) *Colorado River* abstention.  [Doc. 34].  The parties filed opening briefs on March 30, 2020 [Doc. 39; Doc. 40], responses on April 20, 2020 [Doc. 44; Doc. 45], and replies on May 4, 2020 [Doc. 46; Doc. 47].  Thus, the issue is ripe for decision.

## II.    Applicable Law

The court must first determine the appropriate legal framework.  In *Colorado River*, the U.S. Supreme Court recognized that some "exceptional" circumstances permit "dismissal of a

federal suit due to the presence of a concurrent state proceeding." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).  In contrast, in the context of an action under the Declaratory Judgment Act, "district courts possess discretion in determining whether and when to entertain [the] action."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)).  "The *Brillhart* standard is much less stringent than the *Colorado River* test, and *Brillhart* grants a court much more discretion than *Colorado River*." *Zurich Specialties London Ltd. v. Lawrence*, No. 06-CV-0593-CVE-FHM, 2007 WL 489229, at *4 (N.D. Okla. Feb. 8, 2007); *see also Wilton*, 515 U.S. at 286 ("The Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

Here, the Complaint seeks declaratory relief, as well as an injunction.  In an unpublished decision, a Tenth Circuit panel applied the *Colorado River* exceptional circumstances test, rather than the *Brillhart* discretionary standard, to a suit seeking both declaratory relief and an injunction. *See CNSP, Inc. v. City of Santa Fe,* 753 F. App'x 584, 587 (10th Cir. 2018) (unpublished); *see also United States v. City of Las Cruces*, 289 F.3d 1170, 1181 (10th Cir. 2002) ("If the plaintiff only requests a declaration of its rights, not coercive relief, the suit is a declaratory judgment action for purposes of determining whether the district court has broad discretion under *Brillhart* to refuse to entertain the suit.").  Moreover, defendants seek damages in the Counterclaim and Third-Party Complaint.  [Doc. 30].  Although it does not appear that the Tenth Circuit has opined directly on the issue, the Fifth Circuit Court of Appeals has held that counterclaims must be considered to determine the nature of the action and whether the *Colorado River* or *Brillhart* standard applies. *See New England Ins. Co. v. Barnett,* 561 F.3d 392, 397 (5th Cir. 2009); *see also U4, LLC v. Sonic Drive-In of Pittsburg, LLC*, No. 16-1269-EFM-GEB, 2017 WL 3232845, at *3 (D. Kan. July 31,

5

-1 of 21

2017) (citing *Barnett* favorably).   Thus, the court applies the *Colorado River* exceptional circumstances test.[3]

### III.   *Colorado River* Abstention

As previously stated, despite what has been characterized as a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," in "exceptional circumstances," federal courts may "dismiss[] . . . a federal suit due to the presence of a concurrent state proceeding." *Colorado River,* 424 U.S. at 817-18.   Specifically, "[i]t is well-established that 'federal courts have the power to refrain from hearing,' among other things, 'cases which are duplicative of a pending state proceeding.'   This latter principle—the avoidance of duplicative litigation—is at the core of the *Colorado River* doctrine." *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1233 (internal citation omitted) (quoting *Quackenbush*, 517 U.S. at 716-17).   The doctrine is grounded in principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River,* 424 U.S. at 817 (quoting *Kerotest Mfg. Co. v. C-O- Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

"In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as" (1) the court that first assumed jurisdiction over the property; (2) the "inconvenience of the federal forum"; (3) "the desirability of avoiding piecemeal litigation"; and (4) "the order in which jurisdiction was obtained by the concurrent forums." *Id.* at 818.   "No one factor is necessarily determinative; a carefully considered

---

[3] Having reviewed the briefs, the court concludes that *Rooker-Feldman* is inapplicable, despite the U.S. Supreme Court's statement in *Lance v. Dennis*, 546 U.S. 459, 466 n.2 (2006).   However, the Tenth Circuit has recognized that, even where *Rooker-Feldman* does not apply to deprive the court of jurisdiction, "jurisdiction, even though properly obtained, may—and sometimes must—be declined under the principles of abstention." *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).

judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Id.* at 818-19; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) ("[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.").

Additionally, in a later case, the U.S. Supreme Court supplemented the *Colorado River* analysis and recognized that a court may also consider whether state or federal law provides the rule of decision and whether the "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23, 28. Finally, the Tenth Circuit has recognized "[i]n dictum, the Court also strongly suggested that a court may take into account the possibly 'vexatious or reactive nature of either the federal or the state litigation.'" *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1235 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 17 n.20).

Prior to examining these factors, however, the court "must first determine whether the state and federal proceedings are parallel." *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994). The Tenth Circuit has stated that "[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)). The court must consider the state proceedings "as they actually exist," as opposed to "how the state proceedings could have been brought in theory." *Id.* "Proceedings may be parallel even if they 'are far from identical,'" *CNSP, Inc.*, 753 F. App'x at 589 (quoting *D.A. Osguthorpe Family P'ship*, 704 F.3d

at 1233), and "exact identity of parties and issues is not required." *City of Las Cruces*, 289 F.3d at 1182.

A.      *Parallel Proceedings*

Casa Blanca contends that this case and the Tulsa County Case are not parallel because Casa Blanca was not a party to the Tulsa County Case and "[m]ere alignment of interests is not sufficient to hold the cases to be parallel." [Doc. 39, p. 24 (citing *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017))]. However, the Tenth Circuit requires substantially the same parties to litigate substantially the same issues, not exact identity of the parties. *City of Las Cruces*, 289 F.3d at 1182. Here, defendants Falcon Investment and Rayment, as well as third-party defendant Francis are parties to the Tulsa County Case. Plaintiff Casa Blanca—as well as remaining third-party defendants OLBAP, Cat Investments, S.D. Inmobiliaria, and the Lacasa Trust—are alleged to be alter egos of Francis "to seclude his assets and perpetrate a fraud upon his creditors." [Doc. 31, p. 10]. Further, plaintiff Casa Blanca and third-party defendant S.D. Inmobiliaria intervened in the Tulsa County Case on November 25, 2019. Thus, this case and the Tulsa County Case involve substantially the same parties.

Moreover, the parties have and are litigating substantially the same issues in the two different forums. The state district court previously considered the notice provided to Casa Blanca and S.D. Inmobiliaria of the Motion for Order Directing Sale of Property in Satisfaction of Judgment and concluded the notice was "due and proper." Further, the court determined that Francis was the true owner and controlled the Property so as to justify the Sale Order. The litigation is ongoing and the parties have raised allegations of improper service, the legal relationships between the parties, and, significantly, ownership of the Property. Thus, the Tulsa

8

County Case and this case are parallel, and the court turns to the relevant factors articulated by the Supreme Court to determine the propriety of abstention.

      B.     *Colorado River* Factors

      First, the state court assumed jurisdiction over the Property over three years ago, and issued the Sale Order directing that the Property be sold in satisfaction of the Tulsa County Judgment. Although, in this case, Casa Blanca argues that the assumption of jurisdiction was wrongful, the state court nevertheless assumed jurisdiction and it is the duty of that court to determine its own jurisdiction. *Bestway Freight Lines, Inc. v. Sooner Freight Lines*, 308 P.2d 959, 960 (Okla. 1957) ("The question of jurisdiction is primary and fundamental in every case, and cannot be waived by the parties or overlooked by the court. It is the bounden duty of the court to examine into its jurisdiction, whether raised by any party or not, and sua sponte to determine its own jurisdiction."). Thus, the first factor weighs against this court's jurisdiction.

      The second factor—the inconvenience of the federal forum—is neutral as the state and federal courthouses involved in this case are within ½ of a mile of each other, and no party has identified any "physical or logistical inconvenience." *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1234.

      As in *D.A. Osguthorpe*, the third factor—the desirability of avoiding piecemeal litigation—weighs heavily in the court's analysis. Defendants in this case initiated the Tulsa County Case against Francis, among others, over eight (8) years ago in the Oklahoma state court; Rayment obtained the Judgment therein seven years ago; and the state court issued the Sale Order three years ago. Third-party defendant Francis appeared in the state court proceedings. Now, after years of litigation and motion practice in state court, Casa Blanca asks the court for declaratory relief that would effectively void the Sale Order.

Specifically, Casa Blanca asks for a declaration that the state court violated federal law because it lacked jurisdiction to issue the Sale Order, but, as set forth above, it is the obligation of the state court to determine its own jurisdiction.   Although Casa Blanca argues that the jurisdictional determination requires application of federal, rather than state, law, the U.S. Supreme Court has long recognized a "deeply rooted presumption in favor of concurrent state court jurisdiction" in cases arising under federal law.  *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378 (2012); *see also Grubb v. Pub. Utils. Comm'n of Ohio*, 281 U.S. 470, 476 (1930) (recognizing "the doctrine often sustained by this court that the state and federal courts have concurrent jurisdiction of suits of a civil nature arising under the Constitution and laws of the United States, save in exceptional instances where the jurisdiction has been restricted by Congress to the federal courts"); *Claflin v. Houseman*, 93 U.S. 130 (1876).  Further, while Casa Blanca has not sought specific relief from the state court, it has intervened in the Tulsa County Case, and its claims herein are intertwined with the ongoing state court litigation.  Likewise, defendants' counterclaims and third-party claims are intimately connected with the Tulsa County Case, specifically seeking enforcement of the Sale Order, a finding of proper Assignment in that Case, and damages for fraud related, in part, to Casa Blanca's conduct in that case.

Also troubling to the court is the parties' request that this court determine whether the state court properly applied "reverse piercing" or reverse alter ego doctrine to conclude that Casa Blanca and S.D. Inmobiliaria were Francis's alter egos.  Whether Oklahoma has adopted the "reverse piercing" doctrine is a question best left to resolution by Oklahoma state courts, not the federal courts.  *See generally Harris Cty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83-84 (1975) ("Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, we have regularly ordered abstention.  Similarly, when the state-law questions have

concerned matters peculiarly within the province of the local courts, we have inclined toward abstention.").

The parties' requests for relief collectively ask this court to review the state court's Sale Order and Post-Judgment Order. Principles of wise judicial administration and federalism counsel against doing so. Further, depending on the court's resolution of the legal issues presented, additional litigation in state court may be necessary to determine if the Property may nevertheless be attached and sold in satisfaction of the Judgment. Therefore, the third factor weighs strongly in favor of a stay or dismissal.

With respect to the fourth factor, the order in which the courts obtained jurisdiction and the progress of the case, as set forth above, the state court assumed jurisdiction over the Property on June 14, 2017, over eighteen (18) months before the initiation of this case. Further, the parties were previously actively litigating the Tulsa County Case and the Oklahoma Supreme Court assumed original jurisdiction related to a state court Minute Order directed to enforcement of the Judgment. In contrast, this case remains in its early stages and discovery has been stayed pending resolution of jurisdictional issues. *See* [Doc. 54]. Although the Sale Order is stayed pending resolution of this case, upon dismissal of this case, the state court case will have progressed much further. Thus, this factor weighs in favor of a stay or dismissal.

As previously stated, the court may also consider other factors such as which forum's substantive law governs the merits of the litigation, the adequacy of the state forum to protect the parties' rights, and the vexatious or reactive nature of either action.

The governing law factor is mixed and therefore afforded little weight. As previously stated, Casa Blanca's claims related to the local action rule and the propriety of service under the Hague Service Treaty present federal questions. However, whether the state court properly applied

11

the "reverse piercing" doctrine, the validity of the assignment of the Judgment, and defendants' claims for fraud require application of Oklahoma law.  Further, the court is not convinced that the state district court's issuance of orders contrary to Casa Blanca's interests, prior to the time that Casa Blanca intervened in that matter, suggests that the state courts will not adequately protect Casa Blanca's rights.  Finally, like the court in *D.A. Osguthorpe*, it does not escape the court's attention that Casa Blanca filed this case only after expiration of the time to appeal the Sale Order in state court, and only later sought to intervene in the state court proceedings.  *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1235.

On balance, the court concludes that the relevant factors counsel against the exercise of this court's jurisdiction.  Having so concluded, the court may either stay or dismiss this case. Although the Tenth Circuit generally holds that "the better practice is to stay the federal action pending the outcome of the state proceedings," *Fox,* 16 F.3d at 1083, under the circumstances, dismissal is appropriate.  As discussed above, resolution of the issues herein will not completely resolve the controversy related to attachment of the Property, and those issues are best left to resolution by the state court.  Further, the claims may be asserted in state court or other proceedings, recognizing that the federal court "remain[s] open to a dismissed plaintiff who later demonstrate[s] the inadequacy of the state forum." *Cone,* 103 U.S. at 28.

## IV.     Anti-Injunction Act, 28 U.S.C. § 2283

In an abundance of caution, the court also considers application of the Anti-Injunction Act, 28 U.S.C. § 2283, as well as the *Brillhart* factors.  The parties did not raise the Anti-Injunction Act and the court did not direct briefing on the issue, but the court may *sua sponte* raise the Act's applicability.  *See Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004) (court

may *sua sponte* raise Anti-Injunction Act); *Gloucester Marine Rys. Corp. v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir. 1988).

Pursuant to the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "On its face the present Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970); *see also Smith*, 564 U.S. at 306 (quoting *Atl. Coast Line R.R. Co.*, 398 U.S. at 282) ("[T]he Act's core message is one of respect for state courts. The Act broadly commands that those tribunals 'shall remain free from interference by federal courts.'"). The exceptions "are narrow and are not [to] be enlarged by loose statutory construction." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (internal quotations omitted) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988)). "[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed." *Smith,* 564 U.S. at 306 (quoting *Atl. Coast Line R. Co.,* 398 U.S. at 297).

The phrase "proceedings in a State court" is "comprehensive" and "includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Hill v. Martin*, 296 U.S. 393, 403 (1935). The Act's prohibition applies "to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective . . . whether such supplementary or ancillary proceeding is taken in the court which rendered the judgment or in some other." *Id.* Thus, "[i]t is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed

state proceeding." *Atl. Coast Line R.R. Co.*, 398 U.S. at 287 (citing *Okla. Packing Co. v. Okla. Gas & Elec. Co.*, 309 U.S. 4, 9 (1940); *Hill,* 296 U.S. at 403)).   Plaintiff seeks an injunction prohibiting defendants, who are parties to the Tulsa County Case, from enforcing the Tulsa County Judgment and Sale Order in two ancillary proceedings filed in Mexico.   Casa Blanca's request falls squarely within the Anti-Injunction Act's prohibition, even though directed to defendants.

Nor do any of the three statutory exceptions apply.   The first exception applies where the injunctive relief sought is "expressly authorized" by Congress.   28 U.S.C. § 2283.   Casa Blanca brings this suit under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.* and the court's general federal question jurisdiction, 28 U.S.C. § 1331.   [Doc. 2].   The Declaratory Judgment Act does not include an exception to the Anti-Injunction Act.   *See Goss v. Illinois*, 312 F.2d 257, 259 (7th Cir. 1963); *Georgia-Pacific Corp. v. Putnam*, 528 F. Supp. 2d 606, 611 (S.D. W. Va. 2007) (quoting *Garrett v. Hoffman*, 441 F. Supp. 1151, 1158 (E.D. Pa. 1977) ("[T]he Declaratory Judgment Act does not come within the 'expressly authorized' exception.")).   Nor is the first exception "triggered simply by the fact that a state proceeding involves a question of federal law." *Lone Star Promotions, LLC v. Abbey Lane Quilts, LLC,* No. 18-CV-73-DAK, 2018 WL 5808802, at *3 (D. Utah Nov. 6, 2018) (quoting *Emp'rs Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir. 1995)).   Thus, the first exception is inapplicable.

The second exception applies where the injunction is "necessary in aid of [the federal court's] jurisdiction."   28 U.S.C. § 2283.   "The general rule under the 'necessary in aid of its jurisdiction' exception is that where state and federal courts have concurrent jurisdiction over a case, neither court may prevent the parties from simultaneously pursuing claims in both courts." *Lou v. Belzberg*, 834 F.2d 730, 740 (9th Cir. 1987) (citing *Atl. Coast Line R.R. Co.*, 398 U.S. at 295).   That is, where concurrent jurisdiction exists, the state court's assumption of jurisdiction

does not "hinder the federal court's jurisdiction so as to make an injunction *necessary* to aid that jurisdiction." *Atl. Coast Line R.R. Co*., 398 U.S. at 296 (emphasis in original); *see also Sinisgallo v. Town of Islip Hous. Auth*., 865 F. Supp. 2d 307, 318 (E.D.N.Y. 2012) (quoting *Sierra v. City of New York*, 528 F. Supp. 2d 465, 468 (S.D.N.Y. 2008)) ("[C]ourts have found that where a plaintiff 'could fully preserve in state court' as a defense the claims asserted in federal court, the second exception to the Anti-Injunction Act is not applicable because the 'pendency of the state court proceedings would not meaningfully threaten th[e] Court's jurisdiction.'").

Casa Blanca seeks an interpretation of federal laws and treaties.  As previously stated, the U.S. Supreme Court has long recognized a "deeply rooted presumption in favor of concurrent state court jurisdiction" in cases arising under federal law.  *See Mims*, 565 U.S. at 378.  Thus, although plaintiff's claims implicate issues of federal law, concurrent jurisdiction exists and Casa Blanca can fully preserve its claims in Tulsa County.  For this reason, the second exception is inapplicable.

Finally, the third exception, known as the "relitigation exception," does not apply.  That exception "authorizes an injunction to prevent state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'"  *Smith*, 564 U.S. at 306 (quoting *Chick Kam Choo*, 486 U.S. at 147).  Here, Casa Blanca seeks an injunction against relitigation of an issue previously determined by the state, not federal, court.  Thus, the third exception cannot apply.

In addition to the three statutory exceptions, the U.S. Supreme Court has recognized that the Act is inapplicable if the injunctive relief is sought by "strangers to the state court proceeding." *Imperial Cty. v. Munoz*, 449 U.S. 54, 59 (1980); *see also Secs. & Exch. Comm'n v. Marquis Props., LLC,* No. 16-CV-0040-JNP, 2016 WL 6839513, at *1 (D. Utah July 21, 2016) (collecting cases).

The Tenth Circuit has not discussed the "strangers to the state court proceeding" exclusion at length.  However, other courts and commentators agree that "[u]nder the 'strangers to the state

court proceedings' exclusion, the Anti-Injunction Act does not bar an injunction when the party requesting injunctive relief in the federal court was neither a party, *nor in privity with a party*, to an earlier state court proceeding sought to be enjoined."  17A James Wm. Moore et al., *Moore's Federal Practice*, § 121.04[3] (3d ed. 2020) (emphasis added).  Here, Casa Blanca intervened in the Tulsa County Case and has filed motions therein, including a motion to quash subpoenas.  Casa Blanca therefore cannot be fairly characterized as a stranger to the Tulsa County proceedings at this time.  Recognizing, however, that Casa Blanca was not a party to the Tulsa County Case at issuance of the Judgment or Sale Order, the court also considers whether privity existed between Casa Blanca and the parties to the state case on the date of the Judgment.

"Despite its long pedigree in the law, privity remains 'an elusive concept.'"  *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1240 (10th Cir. 2017) (internal citation omitted).  The Tenth Circuit has stated that "privity is but a label,' but it is a useful label 'convey[ing] the existence of a relationship sufficient to give courts confidence that the party in the former litigation was an effective representative of the current party's interests.'"  *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1008 (10th Cir. 2015) (quoting *Entek GRB, LLC v. Stull Ranches, LLC*, 763 F.3d 1252, 1258 (10th Cir. 2014)); *see also Lenox MacLaren Surgical Corp.*, 847 F.3d at 1240 (quoting *Taylor v. Sturgell*, 443 U.S. 880, 894 n.8 (2008) ("[T]oday, 'privity' often is used simply 'to express the conclusion that nonparty preclusion is appropriate on any ground.'")).

The Tenth Circuit has found privity for preclusion purposes in a variety of corporate contexts.  *See Lenox MacLaren Surgical Corp.*, 847 F.3d at 1240-41 (collecting cases); *see also Lowell Staats Mining Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1276 (10th Cir 1989) (agents of corporation); *Robinson v. Volkswagenwerk AG*, 56 F.3d 1268, 1275 (10th Cir. 1995) (subsidiary

16

and controlling parent were virtual alter egos).  Where the "parties were functionally or 'near[ly]' acting as one, then they are in privity, such that a final judgment against one bars a subsequent action against the other for the same injury."  *Lenox MacLaren Surgical Corp.*, 847 F.3d at 1240.

Unlike dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may consider matters outside of the pleadings to determine whether requested injunctive relief warrants dismissal under the Anti-Injunction Act.  *See Delta Air Lines, Inc. v. McCoy Rests., Inc.*, 708 F.2d 582, 586 (10th Cir. 1983); *Oracle Gas, LLC v. Beacon Supply Co.*, No. 16-CV-142-KS-MTP, 2017 WL 5653893, at *3 (S.D. Miss. Mar. 10, 2017); *see also Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Based on evidence previously submitted to this court, the court concludes, for the purposes of the procedural analysis only, that Casa Blanca and Sands Media, Inc., Mantra Films, Inc., and Joseph R. Francis—defendants in the Tulsa County Case—were functionally or nearly acting as one, such that the relationship gives the court confidence that those parties were effective representatives of Casa Blanca in the prior state proceedings concerning the Sale Order.  Specifically, Casa Blanca presents evidence of the following.  In 1999, Joe Francis, settlor, and Hallmark Trust, Ltd., trustee, settled the Francis Trust for the benefit of Francis.  [Doc. 21-1, pp. 1, 6].  The Francis Trust owns one hundred percent (100%) of the shares of Island Films, Ltd. and Summerland Holdings, Ltd.  Island Films, Ltd. and Summerland Holdings, Ltd. own Casa Blanca.  [*Id.* at p. 5; Doc. 21-2, pp. 27, 52-53].  Casa Blanca purchased the Property with funds contributed by Rothwell, Ltd.  [Doc. 21-2, p. 52].  The sole shareholder of Rothwell Ltd. is the Francis Trust.  [*Id.*].  Tulsa County Case defendants Sands Media Inc. and Mantra Films Inc. contributed the funds to develop and improve the Property by directly paying the building contractor.[4]  [*Id.*].  Based on

---

[4] Additionally, although neither issue preclusive nor dispositive, the Findings of Fact and Conclusions of Law of the U.S. District Court for the Central District of California in *Rothwell, Ltd. v. United States*, No. CV-10-00479-RGK, 2011 WL 11002845 (C.D. Cal. June 30, 2011) and

the interrelated nature of the entities and common interest in the Property, a sufficiently close relationship exists between Casa Blanca and Tulsa County Defendants Sands Media, Inc., Mantra, Films, Inc., and Francis such that privity exists.  Because Casa Blanca was in privity with a party to the state court proceedings, the Anti-Injunction Act applies.  The requested injunctive relief therefore warrants dismissal under that Act.

## V.        Request for Declaratory Relief and *Brillhart/Mhoon* Factors

Casa Blanca's remaining claims seek only declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.[5]  Additionally, four of defendants' counterclaims and third-party claims seek declaratory judgments.  [Doc. 30; Doc. 31].  Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  As previously stated, the U.S. Supreme Court has made clear that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Wilton.*, 515 U.S. at 282 (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)); *see also State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) ("The Supreme

---

the District Court for Clark County, Nevada case no. A-12-660288-B, *Wynn Las Vegas LLC v. Mantra Films, Inc., et al.*, are also persuasive to the court.

[5] Application of the *Colorado River* "exceptional" circumstances test requires that a party seek a *good faith* injunction.  *See CNSP, Inc.,* 753 F. App'x at 587 (citing *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 795 n.3 (8th Cir. 2008)).  As discussed herein, the Anti-Injunction Act bars Casa Blanca's requested injunction and therefore the court turns to the *Brillhart* factors.  *See Great Lakes Dredge & Dock Co. v. Larrisquitu,* No. H-06-3489, 2007 WL 2330187, at *8 (S.D. Tex. Aug. 15, 2007); *see also Hatton v. Justices of the Okla. Sup. Ct.*, No. CIV-18-1219-C, 2019 WL 1449637, at *2 (W.D. Okla. Apr. 1, 2019).

Court has long made clear that the Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'")).  In deciding whether to hear a declaratory judgment action, the court should consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mhoon,* 31 F.3d at 983 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).  The court separately considers each of the *Brillhart/Mhoon* factors.

*First,* as discussed above, the declaratory relief would not settle the controversy.  Disputes would remain to be resolved in the state court, as well as in two pending proceedings in Mexico.  Nor would the results be binding on non-parties to this action.  Thus, this factor weighs against the exercise of jurisdiction.

*Second*, although the requested declaratory relief would serve some useful purpose by clarifying certain issues related to the relations between the parties and judicial orders directed to the Property, the requested relief would certainly not clarify all issues related to ownership of the Property and whether the Property may be used to satisfy the Tulsa County Judgment.  Thus, the second factor also weighs against the exercise of jurisdiction.

*Third*, the court notes that Casa Blanca filed this new action two years after entry of the Sale Order, rather than raising its claims in litigation that existed in state court (or Mexico).  However, this factor is given little weight.

*Fourth*, and most significant to this court, for the reasons discussed above with respect to *Colorado River* abstention, use of a declaratory action in this case would increase friction between

the federal and state courts.  Adjudicating this matter will serve only to delay the Tulsa County

Case, as well as matters at issue in the pending Mexican litigation.  Further, at least some of the

requested relief relative to the "reverse piercing doctrine" implicates questions of Oklahoma law

best left to resolution by Oklahoma courts.  *See Mid-Continent Cas. Co. v. Vill. at Deer Creek,*

*Homeowners Ass'n, Inc.*, 685 F.3d 977, 986 (10th Cir. 2012).  Thus, this factor weighs strongly

against the court's exercise of jurisdiction.

Fifth and finally, the court notes that multiple alternative remedies exist for the parties'

claims which would be more efficient.  Most notably, the court looks to the Tulsa County Case in

which Casa Blanca has intervened.  Additionally, the litigation currently pending in Mexico

provides an alternative remedy with respect to many of the third-party claims as well as issues

related to the Property.  Thus, this factor weighs against the exercise of jurisdiction.

For the reasons discussed above, on balance, the *Brillhart/Mhoon* factors weigh against the

court exercising jurisdiction over the requests for declaratory relief, and the court declines to do

so.[6]

## V.      Conclusion

WHEREFORE, the court concludes that this action should be dismissed without prejudice

pursuant to the *Colorado River* abstention doctrine.  The court further concludes that plaintiff Casa

Blanca de Punta Mita is not entitled to the requested injunctive relief under the Anti-Injunction

Act, 28 U.S.C. § 2283.  Further, the court declines to exercise jurisdiction over the parties' requests

for declaratory relief based on application of the *Brillhart/Mhoon* factors.  Thus, this action is

dismissed without prejudice.

---

[6] With respect to the conspiracy to commit fraud counterclaim and third-party claim, the parties agree that, if this court declines to hear the remaining claims, either the Tulsa County court or Mexican courts should resolve the issues.  [Doc. 37, pp. 15-16; Doc. 40, p. 18; Doc. 43, p. 9; Doc. 45, pp. 14-15].

IT IS SO ORDERED this 22nd day of July, 2020.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE